# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Michael T. Mason | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 521 | **DATE** | 1/10/2005 |
| **CASE TITLE** | | Lofton vs. Barnhart | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] As stated in attached memorandum opinion and order, plaintiff's motion for summary judgment [8-1] is denied, the Commissioner's motion for summary judgment [14-1] is granted and the decision of the ALJ is affirmed. The Clerk of Court is directed to enter judgment in favor of defendant, Jo Anne B. Barnhart, acting Commissioner of Social Security, and against plaintiff, Yvonne Lofton. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | 3 | | Document Number |
|---|---|---|---|---|---|---|
| | No notices required. | | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | | JAN 1 1 2005 | | |
| | Notified counsel by telephone. | | | date docketed | | |
| | Docketing to mail notices. | | | JXM | | |
| ✓ | Mail AO 450 form. | | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | 1/10/2005 | | |
| | | | | date mailed notice | | |
| KF | courtroom deputy's initials | | | KF | | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | | |

YVONNE LOFTON,                )
                             )
          Plaintiff,          )
                             )     No. 04 C 0521
     v.                       )
                             )     Mag. Judge Michael T. Mason
JO ANNE B. BARNHART, Acting   )
Commissioner of Social Security )
                             )
          Defendant,          )

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

Plaintiff, Yvonne Lofton ("Lofton" or "plaintiff") has brought a motion for summary judgment seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied Lofton's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") under the Social Security Act ("Act"), 42 U.S.C. §§ 416(i) and 423(d). The Commissioner filed a cross-motion for summary judgment asking that we uphold the decision of the Administrative Law Judge ("ALJ"). We have jurisdiction to hear this matter pursuant to 42 U.S.C. §§ 405(g). For the following reasons, we deny Lofton's motion and grant the Commissioner's motion, affirming the decision of the ALJ.

**Procedural History**

Lofton filed an application for period of disability and disability insurance benefits on April 22, 1998. (R. 54). In her application, she alleged an onset date of June 15, 1997. *Id.* Lofton's claim was denied initially on August 10, 1998 and upon reconsideration on September 30, 1998. On October 6, 1998, Lofton filed a timely Request for Hearing. (R.

41). After due notice, ALJ Helen Cropper held a hearing on July 20, 1999. (R. 171). Lofton appeared and testified at the hearing. *Id.* On July 27, 1999, ALJ Cropper denied plaintiff's claim. (R. 16-27). The ALJ found that Lofton did not become disabled prior to the expiration of her date last insured ("DLI"), June 30, 1998.[1] *Id.* Furthermore, ALJ Cropper found that plaintiff had the residual functional capacity ("RFC") to perform a wide range of light work during that time and could have performed both her past relevant work and other jobs prior to June 30, 1998. (R. 26). The Social Security Administration's Appeals Council denied review of the ALJ's decision on June 30, 2000. (R. 6-7).

Lofton subsequently filed an action in the district court. The parties filed cross-motions for summary judgment and Magistrate Judge Morton Denlow heard oral argument on the motions. The parties then entered into a joint stipulation to remand the claim for a supplemental hearing and decision. (R. 231). The stipulation provided as follows:

> The ALJ will be directed to evaluate the evidence from Cook County Hospital which contains the diagnoses of degenerative joint disease of the left hip and knee. Evidence from a board-certified orthopedist will be obtained to assist in determining the claimant's residual functional capacity. The ALJ will also be directed to reassess the claimant's subjective complaints of pain and limitations in accordance with SSR 96-7p. Additional evidence from a vocational expert will be obtained to assist in determining whether the claimant can return to her past relevant work or perform other work. The claimant will be given the opportunity to submit additional evidence for the relevant period and appear at a hearing.

(R. 231). The Appeals Council remanded the case to ALJ Cropper and issued the following remand order:

> After a careful review of the record of evidence, [the ALJ's opinion] fails to sufficiently state the basis for finding that the claimant would be off task for less than

---

[1] In order to receive Title II disability insurance benefits, Lofton had to prove that she was disabled on or before June 30, 1998, her date last insured. *Meredith v. Bowen*, 833 F.2d 650, 652 (7th Cir. 1987).

five percent of the work day. In addition, the record does not show that the consultative examiner, Dr. Shermer, was aware of the x-ray findings which showed that the claimant has degenerative joint disease in her left hip and knee.

The Appeals Council believes that the file would benefit from a reevaluation and consideration of the two above factors.

(R. 335).

On April 25, 2002, ALJ Cropper held the remand hearing. (R. 250). However, plaintiff's counsel objected to the competency of the medical expert present at the hearing and opted to reschedule the remand hearing. (R. 271). The ALJ held another remand hearing ("the second remand hearing") on June 19, 2002. (R. 290-333). At that hearing, plaintiff's nephew, Mr. Eddie Drake, testified on her behalf. (R. 301). Dr. Daniel Girzadas, an orthopedic medical expert, and vocational expert Dr. Chrisann Schiro-Geist also testified. (R. 311, 320). At the second remand hearing, plaintiff's counsel informed the ALJ that he could not obtain the November 1997 x-ray reports that were referenced in the Appeals Council's remand order because Cook County Hospital had purged the records. (R. 300). On September 26, 2003, ALJ Cropper issued a second decision denying Lofton's claim. (R. 230-249). Plaintiff waived the right to file exceptions with the Appeals Council in order to file directly with this court pursuant to 20 C.F.R. § 404.984. Lofton filed a civil action in the district court on January 22, 2004.

**Plaintiff's Testimony**

Yvonne Lofton was born on February 24, 1944. (R. 54). Her highest level of education is the tenth grade and she has no formal vocational training. (R. 192). However, Lofton can read and write and perform basic arithmetic. *Id.* She claims that she was disabled and unable to work prior to her DLI of June 30, 1998 and since that time due to

severe pain in her knee, back and hip areas and also due to diabetes-related symptoms. (R. 178, 187).

Lofton testified that she has daily, severe pain in her knees, hip and back areas to the extent that she has trouble walking more than two blocks without rest. (R. 178). She testified that she has been experiencing these symptoms since October 1997. (R. 180). Lofton claimed that she was diagnosed with diabetes in October 1997. *Id.* Plaintiff also testified that, when she wakes up in the morning, she experiences severe stiffness and soreness such that she does not want to get out of bed. (R. 183). She testified that she does a minimal amount of housework, that she is unable to cook and that she must have someone accompany her to go grocery shopping. (R. 185). Lofton said that her daily activities were, for the most part, reduced to watching television. *Id.*

Lofton testified that she takes Tylenol for her pain but that it does not fully relieve her symptoms. (R. 178-179). In addition, plaintiff takes medication to control her glucose level, but testified that she still has symptoms of feeling off-balance. (R. 182).

**Mr. Drake's Testimony**

At the second remand hearing, plaintiff's nephew, Eddie Drake, testified on her behalf. Mr. Drake was 29 years old at the time of his testimony. (R. 301). He testified that he saw Lofton nearly every day during the relevant time period. *Id.* He also testified that Lofton was having trouble walking at that time because of problems she was having with her leg. (R. 302). He testified that she would stumble a lot and often needed help walking. *Id.* Mr. Drake testified that Lofton would often want to sit and rest. *Id.* Finally, he testified that, in the end of 1997, he helped with certain household work that Lofton was unable to

do. (R. 305).

**Medical Evidence**

Lofton visited Cook County Hospital and several Fantus clinics on a frequent basis beginning in October 1997. Lofton visited a Fantus gynecology clinic in October 1997 for menopause-related symptoms. (R. 109). At that visit, Lofton indicated that her only other current medical problem was "borderline" diabetes, for which she was taking oral medication. *Id.* Lofton visited Cook County Hospital's emergency room on November 18, 1997 because she had missed a general medicine clinic appointment and needed a new appointment. (R. 122-123). Plaintiff reported to the ER doctor that she had been having left hip pain which seemed to originate in the low back and also affected her left knee. *Id.* She reported experiencing the pain, which was getting worse, for the preceding month. *Id.* The ER doctor noted that Lofton had a left-sided limp and decreased left hip range of motion. *Id.* Plaintiff was prescribed Motrin and referred for x-rays, which were apparently taken but not read. *Id.* These November 1997 x-rays were purged by Cook County Hospital sometime in 2002. (R. 233). The ER doctor diagnosed plaintiff with "degenerative joint disease, left knee and hip." (R. 123). Lofton was instructed to return if her pain or weakness worsened or if she felt any new symptoms. (R. 123).

On November 21, 1997, Lofton's medical records indicate that she complained of left knee pain and was given a prescription for extended relief Tylenol. (R. 107). Plaintiff was referred to physical therapy at that time but apparently did not follow up on the referral. (R. 107, R. 242).

Lofton had an initial visit in the Fantus diabetes clinic on May 22, 1998. (R. 103).

5

She followed up at the general medicine clinic on May 29, 1998. (R. 101). No medical complaints were reported at either of these visits. (R. 101, 103). On May 29, 1998, Lofton's blood sugar was not well controlled and her dose of Glipizide was increased. (R. 101). A week later, in the diabetes clinic, plaintiff's medication was changed. (R. 98, 100). Lofton visited the diabetes clinic twice in August 1998. (R. 149-150). On both occasions, there were no reported complaints about her condition. Id.

Lofton had two consultative exams in connection with her disability claim. On July 24, 1998, she was examined by Dr. Alvaro Rios, an internist. (R. 124). Lofton reported that her medical problems included diabetes, hypertension and arthritis. Id. Lofton complained of back pain radiating to the left leg. Id. She indicated that the pain had been going on for five years but that it was relieved by over the counter medication. Id. Dr. Rios noted that Lofton had high blood pressure and tenderness and decreased range of motion of the lumbar spine. (R. 126). Her gait, ambulation and neurological examination were within normal limits. Id. Dr. Rios offered the following clinical impressions: 1) plaintiff suffered from diabetes with no evidence of end organ damage; 2) plaintiff suffered from hypertension with no evidence of end organ damage; and 3) plaintiff most likely suffered from degenerative joint disease which caused her to have a history of back pain and a decreased range of motion. Id. An x-ray of Lofton's lumbosacral spine that was taken on July 24, 1998 showed "mild osteoarthritis." (R. 130).

On April 12, 1999, Lofton was examined by Dr. Richard Shermer, an orthopedic consultant. (R. 163). At the time of the examination, Lofton complained of pain in her knees, back and left hip. (R. 164). Dr. Shermer noted that plaintiff's knees showed no

swelling or thickening. (R. 165). Lofton had reduced range of motion of the back and hips, but normal bilateral knee range of motion. (R. 165, 167). Dr. Shermer described Lofton's gait as shuffling and Lofton stated that she could not squat. (R. 164). During the examination, Lofton said that she was unable to raise her left leg for the straight leg raise test, but Dr. Shermer noted that plaintiff exhibited "much posturing and no voluntary effort" during the examination. (R. 165).

Dr. Shermer also reviewed the July 24, 1998 x-ray report and diagnosed Lofton with Lumbosacral Pain Syndrome and Lumbar osteoarthritis. (R. 167). Dr. Shermer noted that Lofton suffered from a moderate element of arthritis of the lumbar spine. *Id.* He also noted that the pain component of Lofton's symptoms was not related to the examination findings and that the pain component had a significant subjective relationship. *Id.*

Subsequent to the examination, Dr. Shermer completed an RFC form and opined that plaintiff retained the RFC to perform almost a full range of light work. (R. 239, R. 168-170). Dr. Shermer indicated that Lofton could lift, carry, push and pull up to 20 pounds occasionally and up to 10 pounds frequently, and that she had no limitation from her medical problems on her ability to sit, stand or walk. (R. 168-169). Dr. Shermer based his opinion primarily on Lofton's subjective complaints. (R. 170).

Dr. Paul LaFata also reviewed Lofton's medical records and prepared an RFC form at the request of the state Disability Determination Service ("DDS"). Dr. LaFata opined that Lofton had the RFC, prior to expiration of her DLI,[2] to perform close to a full range of light work. (R. 132-139). He found that plaintiff could lift, carry, push and pull up to 20 pounds

---

[2] Dr. LaFata mistakenly used June 30, 1997 instead of June 30, 1998 as plaintiff's date last insured.

occasionally and up to 10 pounds frequently, and that she could sit, stand and/or walk for a combined total of six hours. *Id.* Dr. LaFata indicated that plaintiff could stoop occasionally. *Id.* Dr. LaFata's opinion was based on Lofton's controlled diabetes and hypertension, the degenerative joint disease in plaintiff's left hip and knee, her decreased range of motion in the lumbosacral spine, and her pain in the lumbosacral spine, hip and knee. *Id.* Dr. Boyd McCracken later reviewed the records and indicated that he agreed with Dr. LaFata's RFC assessment. (R. 139).

At the second remand hearing, Dr. Daniel Girzadas, an orthopedic medical expert, testified. (R. 310). Dr. Girzadas did not examine the plaintiff; rather, his testimony was based on his review of Lofton's previous medical records. *Id.* Dr. Girzadas testified that Lofton's impairments - diabetes, hypertension and osteoarthritis - do impose functional limitations upon her. *Id.* However, he then substantiated and agreed with Dr. Shermer's previous RFC opinion as consistent with Dr. Shermer's examination of the plaintiff and with the other objective medical evidence of record. (R. 315). Dr. Girzadas opined that the findings reflected a probable condition of mild degenerative arthritis of the hip and knee. (R. 314). With regard to the Lofton's arthritis, he testified that increasing activity, a sudden turn, quick move or even lifting a child could cause arthritic "flare-ups." (R. 318). However, Dr. Girzadas also testified that these "flare-ups" are not severe and can be relieved with the use of over the counter pain medication. (R. 320). In his opinion, an arthritic "flare-up" of this nature could happen to anyone who has a small amount of arthritis. *Id.*

On May 1, 2003, Lofton had additional x-rays of her left knee and hip taken. (R. 233). Dr. John Gall, the radiologist who administered the x-rays, reported that the left knee

showed only "minor osteoporotic changes." (R. 471). The left hip x-ray showed only "minor degenerative changes" and "mild osteoporotic changes." (R. 472).

**Vocational Expert's Testimony**

At the initial hearing, on July 20, 1999, the testifying vocational expert was Dr. Michael Komie, a licensed clinical psychologist and certified rehabilitation counselor. (R. at 210). Dr. Komie testified that Lofton's most recent past relevant work was a housekeeper/home health aid. (R. 220). Dr. Komie testified that the housekeeper/home health aid job was a light and unskilled job. *Id.* Plaintiff also had worked part-time as a food demonstrator, which Dr. Komie described as light and unskilled. *Id.* Dr. Komie testified that a person with the RFC to perform a wide range of work at the light exertional level could be expected to perform plaintiff's past relevant work. (R. 222). Such a person also could be expected to perform jobs as a cashier, counter and rental clerk, and food preparer. *Id.* Dr. Komie testified that at the sedentary level, there are jobs available such as sedentary cashier, telemarketer and switchboard operator. (R. 222-223). He further testified that at either the light or sedentary work level, a person could perform the job even if he or she was distracted by pain for up to five percent of the work day. (R. 223). Moreover, he testified that an employer would be likely to tolerate an employee being off task five percent of the day exclusive of breaks and lunch. (R. 223-224).

At the second remand hearing, on June 19, 2002, the testifying vocational expert was Dr. Chrisann Schiro-Geist. (R. 320). Dr. Schiro-Geist testified that Lofton's housekeeper/home health aid job was light and unskilled, both as she had performed it and as it typically is performed. (R. 321-22, R. 244). She testified that a hypothetical person

with plaintiff's RFC could perform plaintiff's past relevant work as a housekeeper/home health aid as well as a variety of other jobs. *Id.* Specifically, such a person could perform work as a cashier at the light and sedentary level, a photo clerk, a reception or information clerk, an usher or a job in food preparation. *Id.* An employer in any of these fields would be unlikely to tolerate an employee spending more than 8-10% of the work day off-task, exclusive of lunch and breaks. *Id.* Consequently, if an employee is subject to frequent distractions, then he or she could not be competitively employed. (R. 323).

**Standard of Review**

We must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is more than a scintilla of evidence and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chafer*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). We must consider the entire administrative record, but we will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). We will "conduct a critical review of the evidence" and will not let the Commissioner's decision stand "if it lacks evidentiary support or an adequate discussion of the issues." *Id.* While the ALJ "must build an accurate and logical bridge from the evidence to [her] conclusion," she need not discuss every piece of evidence in the record. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The ALJ must "sufficiently articulate [her] assessment of the evidence to 'assure us that the ALJ

10

considered the important evidence... [and to enable] us to trace the path of the ALJ's reasoning.'" *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (per curiam) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985)).

**Legal Analysis**

A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant is disabled, the ALJ must consider the following five-step inquiry: "(1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether she can perform her past relevant work, and (5) whether the claimant is capable of performing any work in the national economy." *Dixon*, 270 F.3d at 1176. The claimant has the burden of establishing a disability at steps one through four. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

The ALJ followed this five step analysis.[3] At step one, the ALJ found that plaintiff was not engaged in substantial gainful activity. Although the plaintiff did perform some work activities after her alleged onset date, the work in which she engaged was never sustained for long enough to be considered substantial gainful activity. *Id.* At step two of the analysis, the ALJ found that plaintiff suffered from non-insulin dependant diabetes

---

[3] Steps one through three are analyzed in the ALJ's July 27, 1999 decision.

mellitus (NIDDM), hypertension and arthritis, which are all severe impairments in that they imposed at least minimal restrictions on plaintiff's ability to perform work related activities. At step three, the ALJ found that although plaintiff's ailments were severe, they did not equal any impairment that the Commissioner considered conclusively disabling. Therefore, the ALJ moved onto step four to analyze the vocational factors to determine whether Lofton could perform her past relevant work.

On remand, the ALJ reconsidered steps four and five. At step four, the ALJ found that plaintiff had the RFC to perform a wide range of light work at all times prior to her DLI, June 30, 1998. (R. 244). Furthermore, the ALJ concluded that plaintiff "would not have been distracted more than rarely by pain fatigue, dizziness and/or any other symptoms, to a degree that she was off task and nonproductive during that time." *Id.* Consequently, the ALJ found that Lofton could have performed her past relevant work as a housekeeper/home health aid, relying on the testimony of the two vocational experts. (R. 244). Although such a finding at step four would have been sufficient to end the inquiry, the ALJ considered step five in the alternative. (R. 245). At step five, the ALJ found that Lofton "retained the capacity to make a vocational adjustment to a significant number of light jobs in the national economy." (R. 246-247). Accordingly, the ALJ found that Lofton was not disabled prior to June 30, 1998. *Id.* Again, the ALJ's step five analysis was based on the testimony of the two vocational experts. *Id.*

Steps one through three of the ALJ's decision are not at issue here. Thus, we must determine whether the ALJ's step four analysis and finding that Lofton had the RFC to perform her past relevant work is supported by substantial evidence and free from legal error. Lofton makes a number of arguments to support her request for remand to the ALJ.

12

As discussed more fully below, these arguments are unpersuasive.

**The Appeals Council's Remand Order**

Lofton first argues that remand is appropriate because the ALJ did not follow the Appeals Council's remand order. The ALJ is obligated to take any action that is required by the remand order. 20 C.F.R. § 404.977(b). Lofton argues that, without any explanation, the ALJ once again found that plaintiff would not be interrupted by pain, fatigue, dizziness or other symptoms more than rarely. However, we conclude that the ALJ did support this finding. It is clear from the opinion that the ALJ considered Lofton's subjective complaints, Mr. Drake's testimony, Lofton's contemporaneous statements to her medical providers, her contemporaneous medical records and Lofton's statements to a DDS claims manager in June 1998. Simply put, the ALJ did not find Lofton's testimony to be credible in light of conflicting statements she made in June 1998 and the fact that the contemporaneous medical records do not contain repeated complaints of joint pain, dizziness or fatigue. Furthermore, the ALJ found that Lofton would be distracted only rarely because her occasional pain was relieved by over the counter medication and her other symptoms occurred infrequently.

Lofton also contends that the ALJ failed to consider the fact that when Dr. Shermer issued his report, he was not aware of November 1997 x-ray findings which show that Lofton has degenerative joint disease in her left hip and knee. We disagree. In particular, the ALJ reevaluated the file and obtained additional evidence from a board-certified orthopedist, Dr. Girzadas. The ALJ specifically questioned Dr. Girzadas about the fact that the x-rays at issue could not be produced and about other medical records which indicate that Lofton has degenerative joint disease. Dr. Girzadas agreed with Dr. Shermer's RFC

opinion because it was consistent with Dr. Shermer's examination of plaintiff and with the other objective medical evidence of record. Furthermore, in determining Lofton's RFC, the ALJ considered not only the opinions of Drs. Shermer and Girzadas, but also the medical records showing Lofton's degenerative joint disease. Accordingly, we find that the ALJ properly followed the Appeals Council's remand order by reevaluating the evidence and considering the fact that Dr. Shermer did not have access to the November 1997 x-rays when he issued his report.

Lofton further argues that the ALJ should have submitted to Dr. Girzadas x-rays of the plaintiff that were taken after Dr. Girzadas had testified at the second remand hearing. The Appeals Council's remand order references x-rays that were taken in November 1997. However, those x-rays no longer exist. As a result, plaintiff had new x-rays taken on her left hip and knee on May 1, 2003. Lofton argues that, in order to comply with the remand order, the ALJ was required to submit these new x-rays to Dr. Girzadas. We do not agree. The May 2003 x-rays were taken five years after Lofton's DLI and the radiologist's report indicates only minor degenerative changes. Moreover, the ALJ considered these x-rays in determining Lofton's RFC. Therefore, we find that the ALJ had no duty to submit the new x-rays to Dr. Girzadas.

Additionally, contrary to Lofton's suggestion, we find that the ALJ complied with the parties' joint stipulation to remand entered by Judge Denlow. The ALJ's opinion indicates that she evaluated the degenerative joint disease evidence; allowed Lofton to submit additional evidence; obtained additional evidence from a vocational expert, Dr. Schiro-Geist; and obtained additional evidence from a board-certified orthopedist, Dr. Girzadas. As discussed more fully below, the ALJ also reassessed Lofton's subjective complaints of

14

pain and limitations in accordance with SSR 96-7p. Accordingly, we find that the ALJ complied with the parties' joint stipulation.

**The ALJ's Credibility Determination**

Lofton contends that the ALJ's credibility determination was not supported by the evidence. To succeed on this ground, Lofton must overcome the highly deferential standard that we accord credibility determinations. Because the ALJ is best positioned to evaluate the credibility of a witness, we reverse the ALJ's credibility finding only if it is "patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). However, when questioning the claimant's credibility as to symptoms of pain, the ALJ must follow the specific requirements set forth in SSR 96-7p.

SSR 96-7p requires the ALJ to consider whether there is an underlying "determinable physical or mental impairment that could reasonably be expected to produce the symptoms." SSR 96-7p; *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004). Once this has been established, the ALJ must further evaluate the "intensity, persistence, and functionally limiting effects of the symptoms" in order to determine whether those symptoms "affect the individual's ability to do basic work activities." *Id.* The ALJ then considers the credibility of the claimant in light of "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." *Id.*

Here, the ALJ found that plaintiff suffered from non-insulin dependant diabetes

15

mellitus, hypertension and arthritis. The ALJ recognized that these impairments could reasonably be expected to produce Lofton's allegations of pain, dizziness and fatigue. In accordance with SSR 96-7p, the ALJ then considered the following in evaluating Lofton's reported symptoms: Lofton's daily activities; the location, duration, frequency, and intensity of her symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication; her course of treatment; any measures other than treatment that Lofton uses or has used to relieve her symptoms; and any other factors concerning her functional limitations and restrictions due to her pain or other symptoms. The ALJ also considered Mr. Drake's testimony, Lofton's contemporaneous statements to her medical providers, her contemporaneous medical records, and Lofton's statements to a DDS claims manager in June 1998.

In the opinion, the ALJ outlined the medical evidence in the record and found that it did not support Lofton's claim that she suffered from continuous pain, fatigue and dizziness since October 1997. Specifically, the ALJ stated that although plaintiff visited medical clinics quite frequently, there is only one significant documented complaint of severe joint pain prior to June 1998. Additionally, the ALJ indicated that after plaintiff was diagnosed with degenerative joint disease in her left knee and hip in November 1997, she was not referred to an arthritis, orthopedic or neurological clinic and plaintiff failed to follow up on her physical therapy referral. The ALJ also cited to the fact that Lofton did not request prescription strength medication, she was not prescribed prescription strength medication for pain or inflammation, she did not advise her doctors of the constant debilitating pain and she did not seek a referral to a specialty clinic.

Furthermore, the ALJ noted that the records from the diabetes clinic contradicted

16

Lofton's testimony about the frequency of symptoms consistent with poorly controlled blood sugar. The ALJ also indicated that plaintiff's complaints were inconsistent with statements she made to a DDS claims manager about her daily activities in June 1998. Finally, while the ALJ considered Mr. Drake's testimony in support of plaintiff's complaints, she noted that Mr. Drake could not recall Lofton's daily activities and circumstances during a period so remote in the past.

The ALJ may not discredit a claimant's subjective complaints of severe pain simply because they are not supported by objective evidence. *Carradine v. Barnhart,* 360 F.3d 751, 753 (7th Cir. 2004). However, the ALJ is entitled to give more weight to a claimant's contemporaneous statement than to statements that are made at the hearing to determine eligibility for benefits. *Brewer v. Chater,* 103 F.3d 1384, 1392 (7th Cir. 1997). Here, the ALJ did not disregard Lofton's complaints of pain simply because they were unsupported by medical evidence. To the contrary, the ALJ decided to give more weight to the fact that Lofton's contemporaneous statements during pre-DLI hospital visits did not contain complaints of severe pain, dizziness or fatigue. The ALJ found that the contemporaneous statements (or lack thereof) were more believable than the statements Lofton made at the hearing to determine whether she was entitled to disability benefits taking place several years after the relevant time period had expired.

As detailed above, the ALJ cited specific reasons for her credibility determination. We find that the ALJ adequately addressed the factors in SSR 96-7p and her credibility determination is supported by substantial evidence. "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Brown,* 869

F.2d 1055, 1057 (7th Cir. 1989). The ALJ's credibility determination is not "patently wrong" and will not be overturned.

**The ALJ's RFC Finding**

Lofton makes a number of arguments regarding the ALJ's RFC analysis. In particular, Lofton argues that the ALJ dismissed the testimony about her inability to perform physical activities; that the ALJ ignored her complaints of pain, slowness, fatigue and balance problems; and that the ALJ failed to evaluate her medical situation as a whole because she did not consider plaintiff's high glucose level and blood pressure. However, the ALJ did not arbitrarily dismiss evidence favorable to Lofton as she suggests. Instead, the ALJ found that she could not give full credibility to plaintiff's testimony or to Mr. Drake's testimony. The ALJ also considered Dr. Girzadas' testimony that it is possible for a person with diabetes or hypertension to experience dizziness, fatigue or disequilibrium. Nevertheless, the ALJ found that Lofton's medical records were inconsistent with her claims about the frequency of symptoms associated with poorly controlled blood sugar.

Lofton further argues that the opinions of Dr. Shermer and Dr. Girzadas cannot be deemed substantial evidence to support the RFC determination because the doctors only considered Lofton's back problems. This argument is unpersuasive. First, Dr. Girzadas did consider Lofton's diabetes and hypertension as the ALJ's opinion indicates. Second, even if the doctors only considered Lofton's back or musculoskeletal problems, the ALJ made it perfectly clear that she considered all of Lofton's complaints and the other circumstances of Lofton's life in determining Lofton's RFC. While the ALJ gave significant weight to Dr. Shermer, Dr. Girzadas, Dr. LaFata and Dr. McCracken's consistent opinions, the ALJ also considered plaintiff's complaints, Mr. Drake's testimony, all of plaintiff's

medical records and plaintiff's life circumstances. After reevaluating all of the evidence and making a credibility determination with respect to plaintiff's complaints, the ALJ determined that Lofton had the RFC, at all times prior to June 30, 1998, to perform a wide range of light work. The ALJ's opinion states the specific reasons why she found Lofton and Drake's testimony to be lacking in credibility and why she gave greater weight to the opinions of Dr. Shermer and Dr. Girzadas. Here, the ALJ's opinion sets forth a logical bridge from the evidence to her conclusion and therefore, we find that the ALJ's RFC determination is supported by substantial evidence.

**Past Relevant Work**

Lofton contends that the ALJ erred in finding that she could perform her past relevant work. A person is able to perform her past relevant work at step four, if she can *either* perform her actual past relevant job, or perform her past relevant job as it is normally performed in the economy. *Anderson v. Bowen*, 868 F.2d 921, 925 n.11 (7th Cir. 1989); *see also* SSR 82-61 ("a claimant will be found to be 'not disabled' when it is determined that he or she retains the RFC to perform (1) the actual functional demands and job duties of a particular past relevant job or (2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy.").

The ALJ found that Lofton could perform her actual past relevant job as a housekeeper/home health aid as she had performed it. Lofton claims that she could not perform her past relevant work as she had performed it because she could not walk or stand well, she needed to keep her legs elevated, she could not perform any physical activity and she was unable to sustain a normal workday. However, these allegations are

19

supported only by Lofton and Mr. Drake's testimony, which the ALJ found to lack credibility. The ALJ supported her conclusion that Lofton could perform her past relevant work by relying on two vocational experts. Both experts testified that Lofton's work as a housekeeper/home health aid, as she had performed it, was light and unskilled. Furthermore, both experts testified that a hypothetical person like plaintiff could perform plaintiff's actual past relevant job. Accordingly, we find that the ALJ's determination that Lofton could perform her past relevant work as a housekeeper/home health aid is supported by substantial evidence.

Lofton also argues the ALJ failed to follow SSR 00-4p, which requires the ALJ to inquire into whether any inconsistencies exist between the vocational expert's testimony and the *Dictionary of Occupational Titles* ("DOT")(4th Ed., 1991). Lofton claims that the vocational experts' testimony conflicted with the DOT because the DOT describes a housekeeper as a skilled job while the vocational experts testified that it is an unskilled job. SSR 00-4p states that in making disability determinations, the adjudicators rely primarily on the DOT for information about the requirements of work in the national economy. Here, however, the ALJ's finding was not based on Lofton's ability to perform her past work as it is normally performed in the national economy. Instead, the ALJ found that Lofton could perform her actual past relevant job as a housekeeper/home health aid. Consequently, SSR 00-4p does not apply here.

**Other Work and the Borderline Age Analysis**

Finally, Lofton argues that the ALJ erred at step five in concluding that Lofton was able to perform other work during the relevant time period and that she was not in a "borderline age situation" under 20 C.F.R. § 404.1563(b). However, the step five inquiry

is only relevant if there is a finding at step four that Lofton could not perform her past relevant work. As detailed above, we agree with the ALJ's determination that Lofton had the RFC to perform her past relevant work. Therefore, we need not address the step five issues relating to Lofton's ability to perform other work and the borderline age analysis.

## Conclusion

For the reasons set forth above, we find that the ALJ built an accurate and logical bridge between the record evidence and her conclusion that Lofton could perform her actual past relevant job as a housekeeper/home health aid. Therefore, we conclude that the ALJ's findings at step four are free from legal error and supported by substantial evidence. Accordingly, Lofton's motion for summary judgment is denied and the Commissioner's motion for summary judgment is granted. The decision of the ALJ is affirmed. It is so ordered.

ENTER:

**MICHAEL T. MASON**
**United Stated Magistrate Judge**

Dated: January /2, 2005